MONROE E. SMITH ET AL. V. FIRST NATIONAL BANK OF CHADRON.

FILED JUNE 18, 1895.    No. 5666.

1. **Trial:** CONTINUANCE: ABSENCE OF WITNESS. It is proper to refuse an application to withdraw a juror and continue the case for the purpose of enabling a party to procure the attendance of of a witness, when the other party admits the only fact sought to be proved by such witness, except what is cumulative in its character.

2. **Evidence of Value of Stock of Goods.** Where the value of a stock of dry goods was in issue, *held* not to be competent to inquire of a witness not shown to have seen or to know anything in regard to this stock, what proportion of the original cost would represent the value of a stock of dry goods after it had been in a store three months.

3. **Evidence of Records.** The existence of a record must be proved by its production or by an authenticated copy. The non-existence of a record may be proved by the oath of any one who has made a search therefor.

4. **Trial:** CORRECTION OF VERDICT. When a jury returns an incomplete or defective verdict, it is proper for the court to send it back under proper instructions for its completion or correc ion.

5. **Mortgages to Banks:** ULTRA VIRES: COLLATERAL ATTACK. Where a bank takes a mortgage to secure a debt, a third person cannot attack the transaction or treat the mortgage as void on the ground that it is *ultra vires* of the bank to take such security.

6. **Sales:** FRAUD: TIME TO RESCIND. The vendor of goods, in order to rescind a sale on the ground of fraud, must exercise his election to rescind within a reasonable time after the discovery of the fraud.

ERROR from the district court of Dawes county. Tried below before KINKAID, J.

*Spargur & Fisher* and *Charles B. Keller*, for plaintiffs in error.

*Albert W. Crites, contra.*

IRVINE, C.

This was an action in replevin by the plaintiffs in error, partners doing business as M. E. Smith & Co., to recover the possession of certain goods which, it was claimed, had been obtained from them by C. F. Yates & Co. by fraud, and which had passed into the hands of the First National Bank of Chadron under a chattel mortgage given by Yates & Co. to the bank. The action was brought under the same form of petition and upon the same theory as the cases of *Tootle v. First Nat. Bank of Chadron*, 34 Neb., 863, and *McKinney v. First Nat. Bank of Chadron*, 36 Neb., 629. The case arose out of the same failure, and the general features of the law applicable to the case were settled in those decisions. In this case there was a verdict for the defendant, and judgment thereon, from which the plaintiffs prosecute error.

Two briefs have been filed on behalf of the plaintiffs in error. One of them discusses several questions not raised by any assignment of error, and treats so indirectly the questions presented by some of the assignments that it is very difficult to follow the case from the briefs. Inasmuch as our conclusions lead to an affirmance of the judgment, we shall follow the assignments in the petition in error without regard to the rule that such assignments are waived unless called to the attention of the court by briefs or argument.

It is the theory of plaintiffs that Yates & Co., by statements made to an agent of the plaintiffs, and to Dun's and

Bradstreet's agencies communicated to the plaintiffs, had misrepresented their financial condition. Written statements purporting to come from Yates & Co. were offered in evidence and objected to. Whereupon an application was made to withdraw a juror and continue the cause for the purpose of procuring the attendance of a witness by whom it might be proved that these statements were made by Yates & Co. Thereupon the defendant withdrew objection to the introduction of these statements, and agreed that they might be "deemed as made by Mr. Yates directly." The court then overruled the application for a continuance and this order is assigned as error. The admission made by the defendant supplied all the proof which it was sought to make by the absent witness, except as to the value of the property replevied, and as the plaintiffs had other witnesses on the question of value, the testimony of this witness would only have been cumulative. The court, therefore, did not err in refusing the continuance.

The second and third assignments of error relate to the refusal of the court to permit the introduction of certain testimony in rebuttal as to the value of the property, and to its further refusal to permit the plaintiffs to withdraw their rest and offer such testimony in chief. The question of value, the goods having been delivered to the plaintiffs under the writ, was properly opened by the defense to establish its damages. The plaintiffs, as a part of depositions, relating otherwise to matters in chief, had in their principal case offered some evidence as to value. Notwithstanding this, if the testimony offered on rebuttal had been competent, we would hold that the court should have received it at that time. But it was not competent. The witnesses were not asked as to the value of the goods. It was not shown that they had examined these goods, or knew anything of their character. It was merely shown that they had been engaged in selling dry goods, and "to some extent" were acquainted with the value of such goods.

Then they were asked what would be the value of a stock of dry goods that had been kept in a store about three months, as compared with the original cost of such goods? It was this question to which the court sustained the objection. It was not competent either in chief or in rebuttal. The value of such goods must depend to a large extent upon their character, and the manner in which they have been kept, and to a certain extent on the fluctuations of the market. Expert testimony is always a source of danger, and it would not have done to have permitted these witnesses, simply upon showing that they were to some extent familiar with the value of dry goods, to testify what proportion of the cost would represent the value of certain specific goods, which it was not shown they had seen, and of the condition and nature of which it was not shown they had any knowledge.

The fourth assignment is that the court erred "in striking out the material portion of the deposition of S. V. Pitcher," etc. To questions asked this witness ten objections were sustained. Overlooking the fact that the assignment of error does not call attention to any particular one of these rulings, we have no hesitation in saying that they are all correct. Mr. Pitcher was the county clerk of Sheridan county. One of the representations alleged to have been falsely made by Yates was that he was the owner of certain land in that county. The object of taking Mr. Pitcher's deposition was evidently to show that no land stood of record in Sheridan county in the name of Yates. There is no doubt of the proposition that any person who has examined a record may be permitted to testify that a particular fact does not appear therein. (*Gutta Percha Mfg. Co. v. Village of Ogalalla*, 40 Neb., 775.) But in taking Mr. Pitcher's deposition particular pains seem to have been taken not to make such an inquiry. His attention was called not to the records of his office, but to their index, and, except in one instance, he was asked affirma-

tively for the contents of the index, and not as to the result of a search showing the absence of a certain fact from the record. The questions asked him were what facts the index affirmatively disclosed, and also whether Yates' name appeared as grantor. The first class of questions was objectionable as calling for secondary evidence; the second as being immaterial to the issues. It was immaterial what the record showed in the way of conveyances by Yates. The issue was what he owned at the time of the representations.

The fifth assignment is that the court erred in sustaining an objection to a portion of a paper marked "Exhibit E," attached to the deposition of Monroe E. Smith. We cannot find that any such deposition was offered in evidence. We do find an "Exhibit E" attached to the deposition of Arthur C. Smith, this being a report furnished to Smith & Co. by Bradstreet's agency. The portion excluded does not purport to contain information derived from Yates, but on its face conveys information derived from other sources. Very clearly, Yates was not chargeable with the statement. It was immaterial to the case, and properly excluded.

The sixth assignment is that the court erred in admitting the appraisement made for the purpose of executing the writ of replevin. The appraisers were called as witnesses to the value of the property, and they used the appraisement as a memorandum to refresh their memory. But it was not offered or received in evidence, although it appears attached to the bill of exceptions.

The seventh assignment is that the court erred in giving instructions numbered 1, 2, 3, 4, and 5. The assignment is to the giving of these instructions *en masse*. Some of them are clearly correct, and this assignment must, therefore, be overruled.

The verdict as returned by the jury seems to have left blank the finding of the amount of damages sustained by the bank by reason of plaintiff's detention of the property.

The court then instructed the jury, in writing, specifically how the damages should be assessed, fixing the amount of damages as seven per cent interest on the value of the goods, from the time they were taken under the writ. This instruction was correct, and it was proper for the court, when the jury returned an incomplete verdict, to send the jury back under a proper instruction to correct it.

The ninth assignment is that the court erred " in overlooking plaintiff's motion for a new trial." We presume by this that the pleader meant to write " overruling" instead of "overlooking." The motion for a new trial contains sixteen assignments, and there is, therefore, nothing presented by this assignment calling for specific attention.

The tenth and eleventh assignments are that the verdict was not sustained by sufficient evidence, and that it was contrary to law. On these points counsel argue that the evidence clearly established that the goods were obtained by Yates & Co. by fraud. It is not necessary to consider this question, because, aside from this, the verdict may be sustained on either of two grounds. The first is that two of the notes, to secure which the mortgage of the bank was given, were dated the same day as the mortgage, and the president of the bank testified that the notes were given for " cash advanced." There was no evidence tending to show that these notes were given for an antecedent debt, and if they were given for a loan made at the time the notes and mortgage were executed, the bank was certainly a *bona fide* purchaser of the goods. On this point it is argued that it was *ultra vires* of the bank to lend money on such security. Even if it were, this would not render the mortgage void, and the plaintiffs could not attack it for that reason. The violation of law in this respect does not avoid the transaction, and only the government, by appropriate proceedings, can attack it. This also answers the contention that the security was void because the loan was more than ten per cent of the bank's capital. (*Union Nat. Bank*

*of St. Louis v. Mathews*, 98 U. S., 621; *Gold Mining Co. v. Rocky Mountain Nat. Bank*, 96 U. S., 640; *Town of Lyons v. Lyons Nat. Bank*, 19 Blatch. [U. S.], 279; *Wyman v. Citizens Nat. Bank*, 29 Fed. Rep., 734; *Mills County Nat. Bank v. Perry*, 72 Ia., 15.) But the verdict may be sustained on another ground. The goods were sold by Smith & Co. to Yates & Co. in March, 1889. The mortgage was made June 5, and the action brought June 14. The rule is that the purchaser must rescind, if at all, within a reasonable time after the discovery of the fraud. It is not claimed that any attempt was made to rescind until the action was brought, and the court properly left to the jury the inquiry as to whether the right was exercised within a reasonable time. The evidence justified the jury in finding that it was not.

JUDGMENT AFFIRMED.