PILZ et ux. v. STEINBERGER et al.

No. 10529.

Court of Civil Appeals of Texas. Galveston.

Jan. 13, 1938.

Rehearing Denied Feb. 17, 1938.

Cutrer & Murfee, of Houston, for plaintiffs in error.

Markham & Fischer and E. E. Fischer, all of Houston, for defendant in error Steinberger.

George Charlton, of Tomball, and Berry, Neathery & Berry, of Houston, for defendants in error, A. H. Keefer and others.

GRAVES, Justice.

This general statement of the nature and result of the suit, thought to be correct as such, though unduly long, is taken from the brief for plaintiffs in error:

"The plaintiffs in error, Anton Pilz and wife, Anna Pilz, hereinafter referred to for sake of convenience as plaintiffs, filed this suit for damages, and, in the alternative, for specific performance against the defendants in error, C. C. Steinberger, A. H. Keefer, and the Guaranty Bond State Bank, hereinafter for convenience called defendants.

"Plaintiffs alleged in substance that they owned certain property consisting of approximately 122 acres in Montgomery county, Tex., which they purchased on June 20, A. D. 1929, from Charles J. Jebousek, Sr., and his children; that as part of the purchase price of said property the plaintiffs made, executed, and delivered to their grantors certain promissory notes aggregating a total of $1150, and assumed the payment of an indebtedness owned by the Federal Land Bank, amounting to $1,625 evidenced by promissory note and secured by deed of trust lien on said property.

"On November 30, 1932, plaintiffs were living on said property as their homestead and the defendant, C. C. Steinberger, approached plaintiffs for the purpose of purchasing said property and did then and there agree to purchase the title that plaintiffs had in and to said property for a consideration of $35 per acre, aggregating a total of $4,280, which consideration was to be paid by such defendant by paying off the Federal Land Bank indebtedness and also the indebtedness of Charles J. Jebousek, Sr., and his children, and the balance of said consideration, after deducting the amount of such indebtedness, amounted to $1,780 to be paid to plaintiffs, $1,000 cash and $780

evidenced by a promissory note payable within two years. That plaintiffs informed such defendant of the Jebousek and Federal Land Bank indebtedness, which said defendant agreed to pay, and also of the condition of plaintiffs' title relative to said property, and such defendant agreed to purchase from plaintiffs their title in and to said property as it then existed for the consideration as heretofore stated, and to pay the indebtedness of the Federal Land Bank and the indebtedness of Charles J. Jebousck, Sr., and his children, which included the interest of a child named Willie Jebousek. That pursuant to such agreement, plaintiffs made and executed a general warranty deed, dated November 30, 1932, as grantors, to C. C. Steinberger, as grantee, retaining a vendor's lien and such defendant made and executed a promissory note of even date therewith for the sum of $780, payable to Anton Pilz and wife, Anna Pilz, two years from date, and as additional security executed a deed of trust fixing a lien on said property in favor of the plaintiffs. That of the $1,000 cash, which was to be paid the plaintiffs by such defendant, such defendant paid plaintiffs $50 cash and made and executed a draft, dated November 30, 1932, for the sum of $950, payable to plaintiffs on or before ten days from date. That on November 30, 1932, the general warranty deed, note, deed of trust, and draft, were, by the plaintiffs and said defendant, delivered to and accepted by the defendants, Guaranty Bond State Bank and A. H. Keefer, with the understanding that the Bank was to make collection of the draft and pay the proceeds thereof to the plaintiffs, whereupon the deed was to be delivered to the defendant, Steinberger, and the note and deed of trust to be delivered to the plaintiffs. That if the draft was not paid, then, of course, the general warranty deed was to be returned to the plaintiffs.

"That said draft was not paid by the defendant, Steinberger, and the defendants, Bank and Keefer, so notified the plaintiffs of default in the payment of such draft, whereupon plaintiffs made demand upon the defendants, Bank and Keefer, to return to them their deed, but such defendants failed and refused to do so.

"That thereafter, permission was given to the Bank by plaintiffs to retain said deed until the middle of March, 1933, as the defendant C. C. Steinberger, had agreed to make the draft good and pay the plaintiffs the amount due them thereunder.

"That on March 11, 1933, the defendant, C. C. Steinberger, delivered to plaintiffs his check in the sum of $907.40.

"That on or about March 11, 1933, the plaintiffs agreed with the Bank that if the check was paid it could deliver said general warranty deed to the defendant, C. C. Steinberger, and could deliver to them the promissory note and deed of trust; otherwise, their deed was to be returned to them. That said check was never paid, though demand was made upon the defendant, C. C. Steinberger, to pay same and plaintiffs endeavored to make collection thereof, and on account of the default in the payment of said check the plaintiffs again made demand upon the defendants, Bank and Keefer, to return to them their deed, but said defendants refused to do so. That owing to additional promises made by the defendant, C. C. Steinberger, to pay plaintiffs the consideration which he had agreed to pay them for their property from time to time until the middle part of May, 1933, the plaintiffs relying upon such promises agreed with the defendants that if they were paid any time up until the latter part of May, 1933, then the defendants, Bank and Keefer, could deliver to the defendant, Steinberger, the deed and deliver to plaintiffs the note and deed of trust, but if the consideration was not paid to plaintiffs by the latter part of May, 1933, then, of course, their warranty deed was to be returned to them.

"That by verbal agreement of the parties, both plaintiffs and defendants, the defendants Bank and Keefer were authorized to keep said deed until the latter part of May, A. D. 1933. That the defendant, C. C. Steinberger, making default in the payment of and failing and refusing to pay the consideration which he had agreed, bound and obligated himself to pay the plaintiffs for the purchase of said property, said plaintiffs made demand upon the defendants to return to them their deed but said defendants, all and each of them, failed and refused to return said deed to the plaintiffs until long after the oil activity in that locality had died down and said property had completely lost its market value for oil, gas, or other mineral purposes.

"That said warranty deed was delivered to plaintiffs' attorneys by attorneys for the defendant Bank, on December 18, 1934, and accepted by plaintiffs' attorneys only with the understanding that the acceptance thereof would not, in any way, affect or

interfere with the rights which were being claimed and asserted by plaintiffs against the defendants. That from November 30, 1932, until the fall of 1933, plaintiffs' property and other property in that locality and in close proximity thereto was very valuable for oil, gas, and other mineral purposes, and plaintiffs were, from time to time during such time offered from $40 to $60 per acre base for oil, gas, and mineral royalty on said property, and informed the defendants of such offers and made demand upon the defendants for the return of their deed so that they could sell their property to other parties, as the defendant, C. C. Steinberger, had made default in and failed and refused to pay plaintiffs the consideration which he had agreed, bound, and obligated himself to pay for their land. Plaintiffs also alleged that certain alterations were made in the general warranty deed some time after the deed was delivered to the defendants, Guaranty Bond State Bank and A. H. Keefer, until returned by defendants' attorneys to plaintiffs' attorneys in December, 1934.

"Plaintiffs further alleged that the defendant, C. C. Steinberger, was and has for a long time been engaged in oil, gas, and other mineral business and familiar with the potential value of plaintiffs' land for oil, gas, and other mineral purposes; that the defendants, Bank and A. H. Keefer, were familiar with oil activity in that locality; that the Bank was familiar with transactions of the character described in plaintiffs' petition; that the defendant, C. C. Steinberger, deliberately and fraudulently tied up plaintiffs' land, all of which was acquiesced in, ratified, confirmed, and agreed to by the defendants, Bank and Keefer, which resulted in damages to plaintiffs as alleged in their pleadings.

"That the defendant, C. C. Steinberger, made further default in the payment of the consideration which he had agreed, bound, and obligated himself to pay the plaintiffs for said land, in that he did not pay the indebtedness of Federal Land Bank, nor Charles J. Jebousek, Sr., or any of the children, nor of Willie Jebousek, all of which resulted in suit being filed against the plaintiffs by the Jebouseks for debt and foreclosure of their lien on and against said property. (The foreclosure suit has been determined and plaintiffs lost their title to said property thereunder). That plaintiffs informed defendants, and particularly the defendants, Bank and Keefer, of the offers which they were made for their royalty and minerals on said property from time to time and that if their deed was returned to them they would be able to sell their royalty for from $40 to $60 per acre base, but in spite of said demand, and though defendants knew of the condition of plaintiffs' property and the potential value thereof for oil, gas, and other mineral purposes, nevertheless, they, all and each of them, failed and refused to return the deed to plaintiffs but deliberately, fraudulently, and maliciously and willfully kept same until after all oil activity in that locality had ceased and until plaintiffs' land had lost its value for oil, gas, and other purposes.

"That the defendant, C. C. Steinberger, did not pay the indebtedness of Willie Jebousek, evidenced by a note for the sum of $156.25, as he had agreed to and bound and obligated himself to do, and, on account of failure and default in the payment thereof, Willie Jebousek sold his interest in the property to other parties. That defendants knew of plaintiffs' financial circumstances and knew that they would not be able to save their property, unless they were able to sell oil, gas, and other minerals or royalties thereunder, but, nevertheless, such defendants continued to fail and refuse to return to plaintiffs their deed, all of which resulted in plaintiffs suffering damages for loss of sale of royalty and minerals amounting to $8,000, exemplary damages $5,000, and loss of surface to their land amounting to $2,600, which damages were occasioned by the defendants, all and each of them, tieing up plaintiffs' property so that they were unable to sell same, or any part thereof.

"Plaintiffs in the alternative sued the defendant, C. C. Steinberger, for damages for the difference between the market value of said property at the time of trial and the total amount of consideration that Steinberger agreed to pay plaintiffs for the purchase of said property. Plaintiffs further, in the alternative, asked for specific performance against the defendant, C. C. Steinberger, for the sum of $4,280, aggregating the total consideration which Steinberger had agreed to pay plaintiffs for said property, and for order of sale and foreclosure of plaintiffs' vendor's lien upon said property.

"Defendants, Bank and Keefer, filed their Second Amended Original Answer on November 14, 1935, containing a gen-

eral demurrer, general denial, and certain special exceptions. Said answer also contained a special plea of the two-year statute of limitation, Vernon's Ann.Civ.St. art. 5526, and set up the statute of frauds, Vernon's Ann.Civ.St. art. 1288, as a bar to plaintiffs' cause of action. Said answer also contained various allegations calculated to show that defendants, Bank and Keefer, throughout the transactions whereby they were constituted Escrow-Agents of the plaintiffs and defendant, Steinberger, had·acted in good faith and were consequently not liable to plaintiffs for any damage which they suffered. The answer also contained a plea that plaintiffs had waived their otherwise-assertable rights.

"Defendant Steinberger filed his third amended original answer on November 16, 1935, which contained a general demurrer, general denial, special exceptions, plea of two-year limitation, plea of statute of frauds, and a special plea that plaintiffs never offered or were able to convey to him a fee simple title to the land described in plaintiffs' third amended original petition.

"The cause proceeded to trial before a jury in the ·61st Judicial District Court of Harris county on November 18, 1935.· At the conclusion of the plaintiffs' evidence, the trial court, at the motion of defendants, instructed the jury to return a verdict in favor of all of the defendants, which they did. To the judgment of the court in pursuant of such verdict, plaintiffs excepted and gave notice of. appeal."

■ After careful consideration of the record on appeal, inclusive of the statement of facts, it is this court's conclusion that the learned trial court erred in so instructing this verdict; since that was done on motion of the defendants for judgment in their favor without their having presented any testimony in their own behalf after the plaintiffs had rested, the motion was in legal effect a demurrer to the evidence so presented by the plaintiffs, which was to say that, taking it to be true, it did not establish any grounds for the relief sought; or, to put it another way, the court's action amounted to a declaration that, as a matter of law, the plaintiffs' pleadings and proof had not raised any issue of fact for the jury in support of their declared-upon cause of action. Donaldson v. Oak Park Cemetery, Tex. Civ.App., 110 S.W.2d 119, and authorities therein cited.

It becomes clear from an examination of the extended evidence the plaintiffs did thus present under proper supporting pleadings that it raised material issues of fact over these features of the several causes of action sued upon: (1) Whether Steinberger agreed to purchase from plaintiffs such title as they had in and to the land in question by paying to plaintiffs $4,280, consisting of $1,000 cash, $780 in two years, evidenced by a note, and the Federal Land Bank indebtedness, and the indebtedness held and owned by the Jebouseks, including Willie Jebousek;· and whether the plaintiffs performed their part of such a contract of sale, while Steinberger failed to perform it by not paying the consideration he agreed to pay, including the cash, the Federal Land Bank, and the Jebouseks' indebtedness, as well as the Willie Jebousek note; (2) whether the papers were deposited with the defendants Bank and Keefer with the understanding that, if the $950 was paid any time up to the latter part of May, ·1933, the deed was to be delivered to defendant Steinberger and the note and deed of trust to plaintiffs; but if not paid by such time, then the deed was to be returned to plaintiffs; (3) whether the defendants Bank and Keefer wrongfully and fraudulently withheld from plaintiffs their deed beyond the latter·part of May, 1933; (4) whether the defendants agreed and conspired among themselves to tie up plaintiffs' land, so that plaintiffs could not dispose of or sell same until it had been proved or disproved for oil, gas, and other mineral purposes, and so that, if it was proved to be good for oil, gas, and mineral purposes, defendants would pay the consideration agreed upon, but if not, then they would thereafter let it go without paying anything therefor; (5) whether the plaintiffs complied with the agreement as actually made between them and Steinberger relative to the purchase of their land, and tendered to him the title he had agreed to purchase, conditioned upon his complying with such contract of sale as evidenced by the instruments executed, and the letters written by him; further, whether Steinberger breached that contract of sale, and made default in the performance thereof.

■ It is equally plain that none of the defenses set up by the opposing litigants barred any of the grounds of recovery thus made issues of for the jury; that is, that neither the two-year statute of limitation, nor the statute of frauds, nor

the alleged good faith as mere escrow agents on the part of Keefer and the Bank, nor Steinberger's special plea that plaintiffs had never offered or conveyed to him a fee-simple title to the land involved, nor any others of the extended defenses offered by any of them, concluded the plaintiffs' cause of action, in the absence of a trial of the whole case on the facts; this for the reason that, under the case thus made for the jury by the plaintiffs, the four-year statute of limitation, rather than the two-year one, applied, whereas the transactions as they alleged and supported them did not come within the statute of frauds at all; the further objections defendants made obviously depended upon what the facts would show as to the character of the escrow agents' acts, as well as whether or not Steinberger under the contract had agreed to take the plaintiffs' title as it stood, hence, further, as to whether or not they themselves had done all required of them thereunder in the deeds and tender of performance they gave him.

In view of another trial, it is deemed unnecessary, if not improper, for this court to discuss the evidence referred to at length, since it is enough to determine that such issues of fact arise therefrom; wherefore, it was, as indicated, reversible error to hold that as a matter of law no material issues of fact were raised.

Without further discussion, the judgment will be reversed and the cause remanded.

Reversed and remanded.

PLEASANTS, C. J., absent.